# United States Court of Appeals for the Federal Circuit

2006-5064

BLUE & GOLD, FLEET, L.P.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

HORNBLOWER YACHTS, INC.,

Defendant-Appellee.

Alan I. Saltman, Saltman & Stevens, P.C., of Washington, DC, argued for plaintiff-appellant. With him on the brief was Ruth G. Tiger.

Sean M. Dunn, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee, United States. With him on the brief were Peter D. Keisler, Assistant Attorney General, and Kathryn A. Bleecker, Assistant Director. Of counsel was Carolyn A. Lown, United States Department of the Interior, Office of the Solicitor, of Oakland, California.

Kevin R. Garden, The Garden Law Firm, P.C., of Alexandria, Virginia, argued for defendant-appellee, Hornblower Yachts, Inc. Of counsel were Brian A. Bannon and Andrew W. Dyer, Jr., Blank Rome LLP, of Washington, DC.

Appealed from:United States Court of Federal Claims

Judge Christine O.C. Miller

# United States Court of Appeals for the Federal Circuit

2006-5064

BLUE & GOLD FLEET, L.P.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

HORNBLOWER YACHTS, INC.,

Defendant-Appellee.

---

DECIDED: June 26, 2007

---

Before BRYSON, GAJARSA, and DYK, Circuit Judges.

GAJARSA, Circuit Judge.

This is an appeal from a pre-award bid protest filed under 28 U.S.C. § 1491(b). The plaintiff, Blue & Gold Fleet, L.P. ("Blue & Gold"), appeals the decision of the United States Court of Federal Claims granting judgment on the administrative record to the defendants, the United States and Hornblower Yachts, Inc. ("Hornblower"), allowing the United States to award the contract to Hornblower. Blue & Gold Fleet, L.P. v. United States ("Judgment on Admin. Record"), 70 Fed. Cl. 487 (2006). For the reasons stated below, we affirm.

**I.**

This court summarizes the following background facts, which the parties do not dispute, based on the findings of the Court of Federal Claims.

Alcatraz Island is a National Historic Landmark site situated in the San Francisco Bay, attracts over 1.3 million visitors per year, and generates over $13 million per year in revenue. The National Park Service ("Park Service") is the government entity responsible for the maintenance of Alcatraz and for the "solicitation and selection of contractors to provide ferry transportation, sell concessions, and perform other Alcatraz-related services." Judgment on Admin. Record, 70 Fed. Cl. at 489.

Blue & Gold was the incumbent ferry operator. Id. In July 2004,

> the Park Service issued a notice of availability of a prospectus for the solicitation of proposals for the Alcatraz concession contract. The proposed contract was to include land and water transportation to and from the island, food and beverage services, ticket sales, as well as maintenance of visitor arrival, assembly, and departure facilities.

Id. at 490 (footnote omitted). The solicitation prospectus contained instructions stating that questions must be submitted "in writing . . . no later than 30 days in advance of the due date" of the proposals. To ensure complete dissemination of the bidding information, the Park Service, if it received any questions regarding the solicitation, would distribute the answer to any such questions to all potential offerors. Id. at 512-13. "The closing date for the receipt of the proposals originally was November 24, 2004, but was extended to March 30, 2005." Id. at 490.

The solicitation prospectus also notified offerors that the Park Service would evaluate the proposals using specific selection factors and subfactors, worth a total maximum of thirty points, and the proposal with the highest score would be selected.

These factors and subfactors included the financial viability of the offeror, the proposed franchise fee to the government, compliance with Tier 2 emission standards,[1] commitment to state of the art technology and alternative fuel sources for vessels, and the quality of visitor services. Id. at 490-91.

After receiving the various proposals, the Park Service convened a review panel. The panel issued an extensive evaluation summary that described the narrative basis for scoring each of the factors considered in the proposals. After scoring each proposal based on the enumerated factors, the panel awarded Hornblower the highest overall score of 26.5 points and Blue & Gold the second highest score of 21.5 points. The panel recommended that the Park Service award Hornblower the contract, and the Regional Director of the Park Service approved the panel's recommendation. In September 2005, the Park Service advised all of the offerors that Hornblower had been selected and would be awarded the contract. Id. at 491-92.

In October 2005, Blue & Gold filed a protest with the Government Accountability Office ("GAO") regarding the selection decision. In response to concerns about the GAO's jurisdiction, Blue & Gold also filed a bid protest in the Court of Federal Claims pursuant to 28 U.S.C. § 1491(b), protesting the award and requesting an injunction enjoining the Park Service from awarding the contract. Because of the Court of Federal Claims action, the GAO subsequently dismissed the protest before it. Id. at 492.

On cross-motions for judgment on the administrative record, the Court of Federal Claims held that the Park Service's actions were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," and thus, that Blue & Gold

[1] Tier 2 emission standards are EPA emissions standards for non-road engines. 40 C.F.R. Part 89.

failed to meet its burden on the most important factor required to enjoin the award of the contract – success on the merits. Moreover, balancing the factors required for the issuance of an injunction, the Court of Federal Claims determined that the harm to the Park Service and Hornblower outweighed any irreparable harm to Blue & Gold and that an injunction was not in the public interest. Accordingly, the Court of Federal Claims entered judgment in favor of the United States and Hornblower. Id. at 514. Blue & Gold filed a timely appeal to this court.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

**II.**

A.

We have stated that "[t]his court reviews the trial court's determination on the legal issue of the government's conduct, in a grant of judgment upon the administrative record, without deference." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citations omitted). That is, "this court reapplies the 'arbitrary and capricious' standard of § 706," and "the inquiry is whether the [government]'s procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Id. (quoting 5 U.S.C. § 706(2)(A); other citations omitted); see also 28 U.S.C. § 1491(b)(4) (stating that in bid protest actions, Court of Federal Claims and district courts "shall review the agency's decision pursuant to the standards set forth in section 706 of title 5").

The substantial evidence standard of 5 U.S.C. § 706(2)(E) "applies to the trial court's review of agency findings." Bannum, 404 F.3d at 1357 (citation omitted). Where the Court of Federal Claims makes factual findings from the administrative record in the

first instance, however, "this court reviews such findings for clear error," "like any finding in a bench trial." Id.

B.

Blue & Gold asserted that because Hornblower's proposal did not include the wages and benefits for its employees required by the Service Contract Act, 41 U.S.C. §§ 351-358, the Park Service mistakenly evaluated Hornblower's proposal as financially viable and as allowing Hornblower to offer the Park Service a higher franchise fee. Judgment on Admin. Record, 70 Fed. Cl. at 512. The Court of Federal Claims found that Blue & Gold "missed its chance to protest" based on the Service Contract Act because Blue & Gold (1) was attempting to challenge the terms of the solicitation, rather than the evaluation process, and (2) did not raise the challenge prior to the submission of the proposals. Id. at 513-14.

On appeal, Blue & Gold asserts that the Court of Federal Claims erred on both grounds.

*1.*

While Blue & Gold characterizes this as a challenge to the evaluation of Hornblower's proposal, we agree with the Court of Federal Claims that this argument is properly characterized as a challenge to the terms of the solicitation. By statute, the Park Service must "evaluate . . . proposals and make an award based solely on the factors specified in the solicitation." 10 U.S.C. § 2305(b)(1). In this case, it is true that the decision not to apply the Service Contract Act to the contract may have influenced the evaluation of the proposals; however, the Park Service made this decision during the solicitation, not evaluation, phase of the bidding process. The terms of the

solicitation prospectus did not include any requirement that the bidders consider the Service Contract Act, and thus, the Park Service could not decide at the time of the evaluation to apply the Act. Therefore, Blue & Gold's assertion that the proposals should have been evaluated according to the Act is a challenge to the solicitation.

*2.*

We also hold that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims. This is an issue of first impression for this court. Section 1491(b) of title 28 U.S. Code provides the Court of Federal Claims with "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency." 28 U.S.C. § 1491(b)(1). In doing so, the statute mandates that "the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action." Id. § 1491(b)(3) (emphasis added). Recognition of a waiver rule, which requires that a party object to solicitation terms during the bidding process, furthers this statutory mandate.

Similarly, we have recognized the doctrine of patent ambiguity where the party challenging the government is a party to the government contract. "The doctrine of patent ambiguity is an exception to the general rule of contra proferentem, which courts use to construe ambiguities against the drafter." E.L. Hamm & Assocs., Inc. v. England, 379 F.3d 1334, 1342 (Fed. Cir. 2004). We have applied the doctrine of patent ambiguity in cases where, as here, a disappointed bidder challenges the terms of a solicitation after the selection of another contractor. See Stratos Mobile Networks USA,

LLC v. United States, 213 F.3d 1375, 1381 (Fed. Cir. 2000); Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996). Under the doctrine, where a government solicitation contains a patent ambiguity, the government contractor has "a duty to seek clarification from the government, and its failure to do so precludes acceptance of its interpretation" in a subsequent action against the government. Stratos, 213 F.3d at 1381 (quoting Statistica, 102 F.3d at 1582). This doctrine

> was established to prevent contractors from taking advantage of the government, protect other bidders by assuring that all bidders bid on the same specifications, and materially aid the administration of government contracts by requiring that ambiguities be raised before the contract is bid, thus avoiding costly litigation after the fact.

Cmty. Heating & Plumbing Co. v. Kelso, 987 F.2d 1575, 1580 (Fed. Cir. 1993).

These reasons underlying the patent ambiguity doctrine apply with equal force in the bid protest context. In the absence of a waiver rule, a contractor with knowledge of a solicitation defect could choose to stay silent when submitting its first proposal. If its first proposal loses to another bidder, the contractor could then come forward with the defect to restart the bidding process, perhaps with increased knowledge of its competitors. A waiver rule thus prevents contractors from taking advantage of the government and other bidders, and avoids costly after-the-fact litigation. Accordingly, the same reasons underlying application of the patent ambiguity doctrine against parties to a government contract speak to recognizing a waiver rule against parties challenging the terms of a government solicitation.

We find further support, first, in the GAO's adoption of a similar rule in its bid protest regulations. Specifically, 4 C.F.R. § 21.2(a)(1) requires that "[p]rotests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or

the time set for receipt of initial proposals shall be filed prior to bid opening or the time set for receipt of initial proposals."

We note that several decisions of the Court of Federal Claims have recognized the utility of the GAO timeliness regulation and concluded that where there is a "deficiency or problem in a solicitation . . . the proper procedure for the offeror to follow is not to wait to see if it is the successful offeror before deciding whether to challenge the procurement, but rather to raise the objection in a timely fashion." N.C. Div. of Servs. for the Blind v. United States, 53 Fed. Cl. 147, 165 (2002); see also Argencord Mach. & Equip., Inc. v. United States, 68 Fed. Cl. 167, 175 n.14 (2005); MVM, Inc. v. United States, 46 Fed. Cl. 126, 130 (2000); Allied Tech. Group, Inc. v. United States, 39 Fed. Cl. 125, 146 (1997); Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 358 (1994). The reasons expressed by the Court of Federal Claims mirror those underlying the patent ambiguity doctrine.

> It would be inefficient and costly to authorize this remedy after offerors and the agency had expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation. Vendors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award [sic] and then, if unsuccessful, claim the solicitation was infirm.

Argencord, 68 Fed. Cl. at 175 n.14.

Second, in the patent context, we have recognized that analogous doctrines of laches and equitable estoppel operate to bar relief even though there is no applicable statute of limitations. See A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc) ("Since there is no statute from which to determine the timeliness of an infringement action, vis-a-vis the patentee's first

knowledge of infringement, courts use the equitable doctrine of laches." (quoting Leinoff v. Louis Milona & Sons, 726 F.2d 734, 741 (Fed. Cir. 1984))); id. at 1041 ("Equitable estoppel to assert a claim is another defense addressed to the sound discretion of the trial court.").

With these analogous doctrines as well, we note that several decisions of the Court of Federal Claims have recognized their utility in the bid protest context. See, e.g., Transatlantic Lines LLC v. United States, 68 Fed. Cl. 48, 52, 57 (2005) (considering "delay in procurement process" in balance of hardships prong of injunctive relief); Wit Assocs, Inc. v. United States, 62 Fed. Cl. 657, 662 n.5 (2004) ("[I]n some cases, serious delay in raising a claim may impact the equities in determining whether an injunction should issue or lead to the imposition of laches."); CW Gov't Travel, Inc. v. United States, 61 Fed. Cl. 559, 568-69 (2004) (considering delay as part of laches analysis); Software Testing Solutions, Inc. v. United States, 58 Fed. Cl. 533, 535-36 (2003) (stating that delay may be "considered in the multi-factored analysis of whether injunctive relief is warranted" or in "the application of equitable doctrines such as laches"); Miss. Dep't of Rehab. Servs. v. United States, 58 Fed. Cl. 371, 372-73 (2003) (same).

Therefore, while it is true that the jurisdictional grant of 28 U.S.C. § 1491(b) contains no time limit requiring a solicitation to be challenged before the close of bidding, the statutory mandate of § 1491(b)(3) for courts to "give due regard to . . . the need for expeditious resolution of the action" and the rationale underlying the patent ambiguity doctrine favor recognition of a waiver rule. Recognition of this rule finds further support in the GAO's bid protest regulations and in our analogous doctrines.

Accordingly, a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards in a § 1491(b) action in the Court of Federal Claims.

*3.*

Having recognized a waiver rule in § 1491(b) bid protest actions, we must decide whether the Court of Federal Claims erred in applying it to this case.

Blue & Gold asserts that the government's solicitation was improper because it did not require compliance with the Service Contract Act. The Court of Federal Claims concluded that Blue & Gold knew of the Park Service's "longstanding policy, codified by regulation, of not applying the prevailing wage provisions of the Service Contract Act to its concession contracts." Judgment on Admin. Record, 70 Fed. Cl. at 513 (citing 36 C.F.R. § 51.3).

> Plaintiff knew of this policy for at least three reasons. First, plaintiff's existing concession contract with the Park Service does not contain a wage determination pursuant to the Service Contract Act. Second, the Park Service included in the prospectus a copy of its regulations, among which was 36 C.F.R. § 51.3. Finally, regulations require that any prospectus applying the Service Contract Act include the applicable, currently effective wage determination specifying the minimum wages and fringe benefit for service employees to be employed under the contract. The prospectus issued by the Park Service did not include such information, signifying that the Park Service was not applying the Act. Despite its awareness that the Park Service was not applying the Service Contract Act to the proposals, plaintiff waited until after Hornblower's proposal was selected to protest.

Id. (citations omitted). This court perceives no error in these findings and therefore, concludes that Blue & Gold waived its opportunity to raise the issue prior to the closing of the bidding process.

Moreover, Blue & Gold has not asserted good cause to excuse its delay in notifying the government of its objection. This court also notes that there appears to be no harm to the intended beneficiaries of the Service Contract Act. The government asserts, and Blue & Gold does not dispute, that the Park Service has acquiesced to the subsequent determination of the Department of Labor that the Act apply to the awarded contract. Rule 28(j) Letter, Dec. 5, 2006. All parties have also asserted in their briefs that the intended beneficiaries, i.e., employees furnishing services to the government,[2] are represented in pending matters[3] with the Park Service.

Under these circumstances, the Court of Federal Claims properly found that Blue & Gold had failed to object in a timely fashion to the terms of the prospectus. There was no error in holding for the defendants on Blue & Gold's challenge pursuant to the Service Contract Act.

C.

Blue & Gold asserts several other errors in the decision of the Court of Federal Claims. We find them to be unpersuasive for the following reasons.

First, Blue & Gold asserts that the Court of Federal Claims erred in evaluating Hornblower's proposal because it failed to include the required number of round trips to

---

[2] See Service Contract Act, Pub. L. No. 89-286, 79 Stat. 1034 (1965) (stating that purpose of Service Contract Act is to "provide labor standards for certain persons employed by Federal contractors to furnish services to Federal agencies, and for other purposes"); S. Rep. No. 89-798 (1965), as reprinted in 1965 U.S.C.C.A.N. 3737, 3737 ("The purpose of this bill is to provide labor standards for the protection of employees of contractors and subcontractors furnishing services to or performing maintenance service for Federal agencies.").

[3] It appears that the affected employees have brought two actions in the Northern District of California asserting that the Service Contract Act applies to the contract at issue. Inlandboatmen's Union of the Pac. v. Mainella, No. 06-2152 (N.D. Cal. filed Mar. 23, 2006); Int'l Org. of Masters, Mates & Pilots v. Nat'l Park Serv., No. 06-2107 (N.D. Cal. filed Mar. 21, 2006).

Alcatraz. Blue & Gold contends that because of this error, Hornblower received more points in the Park Service's evaluation than it should have. The prospectus included operating plans that specified in table form a number for the "# BOATS EACH DAY." It is undisputed that Hornblower's proposal met this number.

These operating plan tables, however, also specified departure schedules, which Blue & Gold interprets as requiring more trips than Hornblower proposed. Assuming arguendo that Blue & Gold's interpretation is reasonable, Blue & Gold's challenge relies on a patent ambiguity in interpreting the Park Service's solicitation prospectus. Under such circumstances, as discussed supra Part II.B.2, the government contractor has "a duty to seek clarification from the government, and its failure to do so precludes acceptance of its interpretation" in a subsequent action against the government. Stratos, 213 F.3d at 1381 (quoting Statistica, 102 F.3d at 1582). Blue & Gold does not assert that it sought clarification, and thus, the Park Service's conclusion that Hornblower's proposal satisfied the requirements of the proposal by including sufficient trips to satisfy the daily boat requirement was not "arbitrary, capricious, [or] an abuse of discretion." See 5 U.S.C. § 706(2)(A).

Next, Blue & Gold asserts that the Court of Federal Claims erred because Hornblower's proposal included inaccurate information regarding compliance with emission standards, its ability to operate boats using primarily solar power, and the date by which it would complete construction of its departure facilities. This argument requires Blue & Gold to show that the misrepresentations were both material and relied on by the Park Service. See Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) (requiring a protestor to "show not only a significant error in the procurement

process, but also that the error prejudiced it"); see also Bannum, 404 F.3d at 1353; Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004). Here, the Court of Federal Claims found that Blue & Gold had not shown that any of these misrepresentations was material nor that the Park Service relied on them. We perceive no error in these findings, and therefore, this argument fails as well.

Lastly, Blue & Gold asserts in its reply brief that amendments made to the contract subsequent to its award violate the Concessions Management Improvement Act, 16 U.S.C. §§ 5951-5966, and that the contract is therefore void. However, this argument concerns the legality of the contract and is separate and distinct from Blue & Gold's challenge to the terms of the solicitation. It is not properly before this court, and we therefore decline to consider it.

## III.

For the foregoing reasons, we affirm the decision of the Court of Federal Claims.

AFFIRMED

Each party shall bear its own costs for this appeal.