IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| MOORE'S CAFETERIA SERVICES, d/b/a MCS Management | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-377C (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO
OBTAIN A STAY OF PERFORMANCE PENDING EXPEDITED
APPEAL TO THE COURT OF APPEALS FOR THE FEDERAL CIRCUIT

The defendant, the United States, respectfully submits its response in opposition of the plaintiff's, Moore's Cafeteria Services ("MCS") motion to obtain a stay of performance pending MCS' appeal of this Court's June 29, 2007 judgment to the United States Court of Appeals for the Federal Circuit. Because MCS wholly failed to succeed on the merits of its bid protest, a stay of the state licensing agency's ("SLA") performance should not be granted. Moreover, because a stay of performance would adversely impact the Department of the Army's ability to provide meals for soldiers stationed at Ft. Campbell, KY, this Court should deny MCS' motion.

Pursuant to RCFC 62(c), when an appeal is taken from final judgment granting, dissolving, or denying an injunction, "the Court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as is considered proper for the security of rights of the adverse party." "This provision has been interpreted as providing that jurisdiction to grant a stay of the Court's own judgment continues to reside in this Court until the Court of Appeals issues its mandate." JWK Int'l, Inc. v. United States, 49 Fed. Cl. 364, 366 (2001) (citations omitted).

An injunction pending appeal, like a stay pending appeal, is an "extraordinary remedy." Alaska Cent. Express, Inc. v. United States, 51 Fed. Cl. 227, 228 (2001) (citing Golden Eagle Ref. Co. v. United States, 4 Cl. Ct. 622, 624 (1984)). When considering such a motion under RCFC 62(c), the court is guided by the Federal Circuit's jurisprudence under Fed. R. App. P. 8(a) and assesses the movant's chances for success on appeal and weighs the equities as they affect the parties and the public. Hilton v. Braunskill, 481 U.S. 770, 776 (1987); JWK Int'l, 49 Fed. Cl. at 366.

The court considers four factors: (1) whether the movant has made a strong showing that he is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Standard Havens Prods. v. Gencor Indus., 897 F.2d 511, 512 (Fed. Cir.1990) (quoting Hilton, 481 U.S. at 776). The court need not give each factor equal weight, and the likelihood of success on the merits is not a rigid concept. Id. If the harm factors weigh heavily in the movant's favor, the plaintiff only needs to demonstrate a substantial case on the merits. Id.

In essence, MCS seeks an injunction to which this Court has already determined it is not entitled. See 6/29/07 Opinion at 2; 20. Because MCS wholly fails to make a showing it is likely to succeed on the merits before the appeals court, and because MCS cannot show that the balance of hardships is in its favor, this Court should deny the motion.

I. MCS Cannot Make A Strong Showing It Is Likely To Succeed On The Merits

MCS cannot make a strong showing it is likely to succeed on the merits of its appeal. In its motion, MCS does not explain why or how this Court's opinion was contrary to law or

otherwise susceptible to appellate review. Instead, MCS rehashes the same legal arguments that this Court rejected. See generally Pl. Mot. at 14-20. MCS offers nothing of substance to suggest that it could succeed upon the merits of the proposed appeal.

The only "new" argument MCS makes is that the five percent benchmark identified in the Joint Report should have been incorporated into the terms of the solicitation pursuant to the Christian doctrine. Pl. Mot. at 2.[1] See G.L. Christian & Assocs. v. United States, 320 F.2d 345, 351 (1963) (holding the doctrine prevents "hobbl[ing] the very policies which the appointed rule-makers consider significant enough to call for . . . mandatory regulation.") The Joint Report guidelines are not mandatory regulation nor a mandatory contract clause. The benchmark is not "a deeply ingrained strand of public procurement policy [ ] considered to be included in a [solicitation] by operation of law." S.J. Amoroso Const. Co. v. United States, 12 F.3d 1072, 1075 (Fed. Cir. 1993). Indeed, as this Court correctly recognized, the Joint Report guidelines are not statute, regulation, or proposed regulation. Slip. Op. at 14. Therefore, MCS' Christian doctrine argument is unlikely to be successful upon appeal.

Because MCS cannot even show "serious, substantial, difficult and doubtful questions that are the proper subject of litigation," this Court should deny MCS's motion on this ground alone. Belgium v. United States, 452 F.3d 1289, 1293 (Fed. Cir. 2006) (citations omitted); FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). MCS has clearly not met its burden to demonstrate a likelihood of success on the merits or even a substantial case as to the merits; indeed, it has offered nothing to indicate that its appeal would be other than spurious. However, as we demonstrate below, a balancing of harms militates against granting the requested motion.

[1] MCS briefly raised this issue at oral argument, but did not brief it.

II. MCS Cannot Show Irreparable Injury

MCS asserts that if injunctive relief is not granted, it will suffer harm in the form of lost revenue and loss of employees. Pl. Mot. at 23. MCS had the opportunity to compete for the food services contract and was not successful. MCS also had two opportunities for judicial review of the procurement decision and neither of those were successful. The crux of MCS' "argument is not a loss of the opportunity to compete for the contract, but rather an assertion that it should have won the contract." JWK Int'l, 49 Fed. Cl. at 369. MCS' alleged injury is based on its failure to be awarded a contract which this Court and the GAO have already determined was awarded in accordance with procurement law. There is no assurance or entitlement to a Government contract. See Keco Industries v. United States, 203 Ct. Cl. 566, 492 F.2d 1200, 1206 (1974). Therefore, this is not a proper basis for injunctive relief.

Moreover, "[r]elief saving one claimant from irreparable injury, at the expense of similar harm caused another, might not qualify as the equitable judgment that a stay represents." Alaska Cent. Express, 51 Fed. Cl. at 232 (citing Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D. C. Cir.1958)). Because a stay of performance will injure the SLA, the Army, and the soldiers at Ft. Campbell, this Court should find the balance of hardships in favor of the Government.

The monetary authority to hire the civilian personnel expired June 30, in anticipation of the SLA commencing performance on Sunday, July 1.[2] The SLA began performance on July 1,

---

[2] This is the same reason the Army was unwilling to voluntarily delay the SLA's commencement of performance in lieu of responding to MCS' motion for a preliminary injunction. The SLA's performance has already been delayed several months pending MCS' GAO protest.

2007. Therefore, MCS is no longer "the contractor in place." Pl. Mot. at 23. Should this Court enjoin the SLA from continuing performance it began yesterday, a complete absence of manpower to prepare meals for soldiers at Ft. Campbell, KY will result. The previous personnel who prepared food at Ft. Campbell are either active-duty military, who have moved on to other work or have been discharged from the Army, or civilian temporary hires whose terms of employment have ended.

At worst, the soldiers may have to eat Meals Ready to Eat ("MRE") portions unless and until the Army can enter into a bridge contract or some other means of providing short-term food services. Ft. Campbell serves over 7000 daily meals to soldiers. A stay or an injunction preventing the Army from using its contract with the SLA frustrates the Army's ability to use the contract it has awarded to the SLA, and will cause considerable harm to soldiers. An injunction will place an immense burden on the Army to temporarily compensate for the SLA contract, through a sole source procurement and will benefit no one except MCS.

MCS does not offer any evidence or argument to support the proposition that granting the stay would avoid substantial harm to the other interested parties. See Pl. Mot. at 23. MCS cannot demonstrate that the stay would not pose substantial harm to the SLA and to the Army if granted, and MCS has failed to show that no harm will be inflicted upon the public interest by a stay. While MCS may generously offer to perform all needed services, both food attendant and full food services, this is not a true stay, but an attempt for MCS to obtain more work from the Government than it has been awarded through competition. Therefore, this Court should find the balance of hardships to be in the Government's favor.

III. MCS Cannot Show An Injunction Serves The Public Interest

The public interest is served by maintaining continuous services to provide for the over 7000 daily meals for soldiers at Ft. Cambpell. Cf. IDEA Int'l, Inc. v. United States, 74 Fed. Cl. 129, 142 (2006) (denying injunctive relief on the basis that the interests of military families and children were "more important than any of the parties who are represented").

There is also a substantial public interest in allowing the government to proceed with contracts awarded, in a manner consistent with fair and open competition, without further disruption. This Court has already examined the procurement and found it to have been properly conducted. The public interest is served when government officials follow all applicable procurement rules and regulations. Cardinal Maint. Serv. v. United States, 63 Fed. Cl. 98, 111 (2004). If the Court were to delay the performance of this contract the only party to benefit would likely be MCS. "There is . . . a considerable reluctance in granting an injunction pending appeal, when to do so, in effect, is to give the appellant the ultimate relief he is seeking." JWK, 49 Fed. Cl. at 370 (citing 11 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 2904, at 513 (2d ed.1995)). MCS' argument that a stay will benefit the public interest, without more, is unavailing.

CONCLUSION

For these reasons, we respectfully request that this Court deny MCS's June 29, 2007 motion to obtain a stay pending its appeal.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/Donald E. Kinner
DONALD E. KINNER
Assistant Director

S/Tara K. Hogan
TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W. 20530
Tele: (202) 616-2228
Fax: (202) 305-7643

OF COUNSEL:
CAPT JOSHUA DREWITZ
LTC FRANK MARCH
Contract & Fiscal Law Division
Department of the Army

July 2, 2007

Attorneys for Defendant

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on this 2nd day of July, 2007, a copy of the foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO OBTAIN A STAY OF PERFORMANCE PENDING EXPEDITED APPEAL" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Tara K. Hogan