# In the United States Court of Federal Claims

**No. 07-377C**
**(Filed: July 3, 2007)**

**ORDER FILED UNDER SEAL**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * | * |
| | * |
| **MOORE'S CAFETERIA SERVICES, d/b/a MCS MANAGEMENT,** | * |
| **Plaintiff,** | * |
| **v.** | * |
| **THE UNITED STATES,** | * |
| **Defendant.** | * |
| * * * * * * * * * * * * * * * * * * * | |

*Sam Z. Gdanski,* Suffern, NY, for plaintiff.

*Tara K. Hogan,* U.S. Department of Justice, Washington, DC, with whom were *Peter D. Keisler, Assistant Attorney General* and *Director Jeanne E. Davidson,* for defendant. *LTC Frank March* and *Capt Joshua Drewitz*, Office of the Judge Advocate General, Department of the Army, of counsel.

## ORDER DENYING PLAINTIFF'S MOTION FOR A STAY OF PERFORMANCE PENDING APPEAL

**FIRESTONE**, *Judge*.

Pending before the court is the plaintiff's, Moore's Cafeteria Services, d/b/a MCS Management ("plaintiff" or "MCS"), motion for a stay of performance of a government

food services contract at Fort Campbell, Kentucky, pending MCS's appeal of this court's June 29, 2007 decision to the United States Court of Appeals for the Federal Circuit, pursuant to Rule 62(c) of the Rules of the United States Court of Federal Claims ("RCFC"). MCS contends that the court should grant its motion because it is likely to succeed on the merits of its appeal and because, absent a stay, it will suffer irreparable harm. The government responds that MCS is not likely to succeed on the merits and that a balance of the hardships falls in the government's favor, and accordingly that MCS's motion should be denied. For the reasons set forth below, MCS's motion to stay pending appeal is **DENIED**.

## BACKGROUND

The complete facts of this case are set forth in the June 29, 2007 Opinion, MCS Management v. United States, No. 07-377 (June 29, 2007), Slip. Op. at 2-9, and can be summarized as follows. MCS, the incumbent contractor, filed a post-award bid protest action in this court on June 15, 2007, challenging the Department of the Army's ("Army") award of a one-year (April 1, 2007 through March 31, 2008) food services contract at Fort Campbell, Kentucky, to the Kentucky Office for the Blind, which is a state licensing agency ("SLA") for the state of Kentucky.

The Army Contracting Agency, Southern Region, Fort Knox Directorate of Contracting, issued solicitation number W9124D-07-R-0012 on January 23, 2007. Administrative Record ("AR") 12-47. The solicitation sought proposals for the provision

of food services at Fort Campbell, Kentucky, for a one-year period beginning April 1, 2007. AR1. The solicitation was a best value procurement and indicated that proposals would be evaluated using lowest priced technically acceptable award criteria, based on past performance and experience. The solicitation stated that price would not be rated.[1] AR41. The solicitation also indicated that it would be subject to the requirements of the Randolph-Sheppard Act ("RSA"), 20 U.S.C. §§ 107-107f (2000), so that

> [a] technically acceptable offer from a qualified State Licensing Agency will receive preference in accordance with the Joint Report to Congress, dated August 29, 2006. This notice is not designed to discourage competition from HUB Zone certified small businesses not eligible for the preference . . . . Application of this preference may result in award to other than the lowest priced technically acceptable offeror.

AR44-45 (emphasis added). The Joint report provided a method for ensuring that RSA priority would be afforded appropriately in military dining procurements:

> Defense Department contracts for the operation of a military dining facility must be awarded as the result of full and open competition. . . . When competing such contracts, contracting officers shall afford State licensing agencies a priority under the [RSA] when (1) the State licensing agency has demonstrated that it can provide such operation at a fair and reasonable price, with food of high quality comparable to that available from other providers of cafeteria services and comparable to the quality and price of food currently provided to military members; and (2) the State licensing agency's final proposal revision, or initial proposal if award is made without discussions, is among the highly ranked final proposal revisions with a reasonable chance of being selected for award. . . . The term "fair and reasonable price" means that the State licensing agency's final proposal revision does not exceed the offer that represents the best value (as determined by the contracting officer after

[1]During MCS's post-award debriefing, the CO stated that the statement "price will not be rated" indicated that "unlike past performance information and experience, price does not receive any type of rating . . . it is evaluated for reasonableness." AR246.

> applying its source selection criteria contained in the solicitation) by more than five percent of that offer, or one million dollars, whichever is less, over all performance periods required by the solicitation.

AR280 (emphasis added).

On January 29, 2007, the CO received an inquiry from the Director of the Tennessee Services for the Blind and Visually Impaired regarding the propriety of the reference to the Joint Report in the solicitation. AR48. The inquiry stated that "to the best of my knowledge there is no directive to convert [the Joint Report] into law." AR48. After considering this inquiry, and after further research, the CO amended the solicitation to remove the reference to the Joint Report. AR2. Amendment 001 to the solicitation, issued on February 7, 2007, reflected the following changes to the language quoted supra:

> A technically acceptable offer from a qualified State Licensing Agency will receive preference in accordance with the Randolph-Sheppard Act. There have been conversations between the contracting office at Fort Knox and a qualified State Licensing Agency in the State of Kentucky regarding interest in providing the services identified in this solicitation. This notice is not designed to discourage competition from HUB Zone certified small businesses not eligible for the preference. . . . Application of this preference may result in award to other than the lowest priced technically acceptable offeror.

AR83-84 (emphasis added). MCS did not object to this Amendment at the time.

The Army received three technically acceptable bids (from Rice Services, MCS, and the Kentucky Office for the Blind) which were determined to have a low performance risk. Price thus became the determining factor in the award. AR220. Rice Services proposed a price of $4,699,536.85; MCS proposed a price of $4,193,135.00; and the Kentucky Office for the Blind, the SLA, proposed a price of $4,561,429.25. The bids

thus fell within an eleven percent range of one another. The Independent Government Estimate ("IGE") was $5,678,000.00. AR220. On February 27, 2007, the Army awarded the contract to the Kentucky Office for the Blind for $4,561,429.25 in accordance with the RSA.

On March 9, 2007, MCS filed a bid protest with the Government Accountability Office ("GAO"), alleging three grounds for protest: (1) the award violated Section 848 of the 2006 NDAA by not employing the five percent test set forth in the Joint Report for determining price reasonableness; (2) the Army did not adequately assess the price reasonableness of the proposals; and (3) the solicitation required a best value analysis, which would have prohibited award to the SLA. AR253-254. In the CO's statement in response to MCS's protest to the GAO, the CO indicated that "[c]ompetition alone was enough to make a price reasonableness determination." AR313. The CO also stated that "if the IGE were determined to be flawed . . . I would still find that the proposed price of the Kentucky SLA is reasonable. . . . [A]dequate competition would have resulted in my determination that the price proposed by the SLA is reasonable." AR313. While the GAO protest was ongoing, performance of the contract by the SLA was stayed, and MCS continued to perform through a series of month-long bridge contracts.

On June 5, 2007, the GAO issued its decision, finding that "the contracting officer correctly concluded that adherence to the policy [of the Joint Report] was not mandatory until it had been implemented through the issuance of regulations, which has not yet

occurred. . . . until such regulations are issued, the policy is the equivalent of internal agency guidance." AR317-318. The GAO also held that MCS's challenge to the IGE was untimely because it was "in essence a challenge to the estimated requirements set out in the RFP; to be timely, it had to be raised prior to the time that proposals were due." AR318. Finally, the GAO found that, "[g]iven the price offered by the [SLA], while higher than the protester's, was lower than the price of the third technically acceptable offeror, the comparison of offerors' prices to one another clearly furnished the contracting officer with an additional valid basis for finding the awardee's price reasonable." AR319.

MCS argued in its bid protest action that the Army's award to the SLA violated policies set forth in a 2006 Joint Report to Congress ("Joint Report") regarding priority afforded to SLAs under the RSA in military dining procurements. MCS also contends that the CO did not adequately perform a price reasonableness analysis and used a flawed IGE in awarding the contract. The government filed a cross-motion for judgment upon the Administrative Record on June 22, 2007, contending that the CO's decision to award the contract to the SLA was appropriate.

On June 29, 2007, this court granted the government's motion for judgment upon the Administrative Record and denied MCS's motion for injunctive relief. <u>MCS Management v. United States</u>, No. 07-377 (June 29, 2007). On that same day, MCS filed a motion to stay performance of the contract pending its appeal to the Federal Circuit, and

filed a notice of appeal. For the reasons set forth below, the plaintiff's motion for a stay pending appeal is **DENIED**.

## DISCUSSION

### I. Standard Of Review

In the event of an appeal "from an interlocutory or final judgment granting, dissolving, or denying an injunction," the court has the power, pursuant to RCFC 62(c), to "in its discretion . . . suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." "[A] stay pending appeal is always an extraordinary remedy." Minor Metals, Inc. v. United States, 38 Fed. Cl. 379, 381 (1997) (quoting Golden Eagle Refining Co. v. United States, 4 Cl. Ct. 622, 624 (1984)). See also, Alaska Central Express, Inc. v. United States, 51 Fed. Cl. 227, 229 (2001); JWK Int'l. Corp. v. United States, 49 Fed. Cl. 364, 366 (2001).

In determining whether to grant a stay pending appeal, the court must consider four factors: (1) the likelihood that the plaintiff will prevail on the merits of the appeal; (2) whether the plaintiff will be irreparably injured absent a stay; (3) whether a stay would pose substantial harm to other interested parties; and (4) the public interest. See, e.g., Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 512 (Fed. Cir. 1990) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)); E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987). "The court need not give

each factor equal weight, and the likelihood of success on the merits is not a rigid concept." Alaska Central, 51 Fed. Cl. at 229. The court considers each of these factors in turn.

## II. MCS Has Not Sufficiently Demonstrated A Likelihood Of Success.

MCS's primary contention in its bid protest action was that the Joint Report, which set forth a five percent preference to be used in considering proposals submitted by SLAs in military dining procurements, should be considered binding on the CO's evaluation process. In its June 29, 2007 Opinion, this court held that the Joint Report was not binding on the Army. Slip. Op. at 12-14. The court also held that even if the Joint Report could be considered legally binding, MCS, under Blue & Gold Fleet, LP v. United States, Fed. Cir. No. 2006-5064 (June 26, 2007), waived its right to challenge the CO's decision to remove any reference to the Joint Report from the solicitation because MCS did not raise such a challenge during the bidding process. Slip. Op. at 10-11.

In its bid protest action, MCS also contended that the CO relied on a flawed IGE in performing a price reasonableness evaluation on the proposals received in response to the solicitation. The court held that the CO's price reasonableness determination was appropriate, Slip. Op. at 14-16, and that even if the IGE was inaccurate, MCS did not demonstrate that it was prejudiced by the use of the IGE in the price reasonableness determination. Slip. Op. at 16-20.

MCS continues to assert that the Army was required to adhere to the five percent

benchmark and that it unlawfully disregarded the Joint Report when it awarded the contract to the SLA.[2] The government responds that MCS has not indicated any aspect of the June 29, 2007 Opinion that would be overturned on review by the Federal Circuit, and that MCS has not set forth "serious, substantial, difficult and doubtful questions that are the proper subject of litigation." Belgium v. United States, 452 F.3d 1289, 1293 (Fed. Cir. 2006). Accordingly, the government contends that MCS has not demonstrated a

[2]At oral argument on its motion for injunctive relief, and again in its motion for a stay pending appeal, MCS briefly raised the argument that the five percent benchmark set forth in the Joint Report should have been incorporated into the solicitation via the Christian doctrine, which was established in G.L. Christian & Assocs. v. United States, 160 Ct. Cl. 1, 320 F.2d 345, 351 (1963). The Christian doctrine provides that "a mandatory contract clause that expresses a significant or deeply ingrained strand of public procurement policy is considered to be included in a contract by operation of law." S.J. Amoroso Const. Co. v. United States, 12 F.3d 1072, 1075 (Fed. Cir. 1993). The policy set forth in the Joint Report does not rise to the level of the policy at issue in Christian. The Christian doctrine was enacted to address issues raised if federal officials intentionally abandoned well-settled contract principles. Id. ("Application . . . turns not on whether the clause was intentionally or inadvertently omitted, but on whether procurement policies are being 'avoided or evaded (deliberately or negligently) by lesser officials.'") (quoting Christian, 320 F.2d at 351). In addition, under Blue & Gold, any objection MCS had to the exclusion of the Joint Report from the solicitation on an alleged violation of the Christian doctrine had to be made at the time it was excluded. Accordingly, the Christian doctrine does not provide a basis for questioning this court's June 29, 2007 decision.

Furthermore, MCS's contention regarding the application of Blue & Gold to this case is without merit. As the Federal Circuit noted in Blue & Gold, Slip. Op. at 8, this court has long held that objections to the terms of the solicitation must be raised prior to award. See, e.g., Argencord Mach. & Equip., Inc. v. United States, 68 Fed. Cl. 167, 175 n.14 (2005); N.C. Div. of Servs. for the Blind v. United States, 53 Fed. Cl. 147, 165 (2002); MVM, Inc. v. United States, 46 Fed. Cl. 126, 130 (2000); Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 358 (1994). Accordingly, MCS should not have been surprised by the holding in Blue & Gold. Moreover, it is well-settled that the court must apply the law in effect at the time a decision is rendered, unless doing so would result in manifest injustice or would contradict statutory direction or legislative history. See Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 711 (1974); Wilson v. Principi, 391 F.3d 1203, 1210 (Fed. Cir. 2004).

likelihood of success on the merits before the Federal Circuit.

The court agrees that MCS has not demonstrated a substantial likelihood of succeeding in its appeal to the Federal Circuit. MCS has not raised any viable new arguments that were not considered by this court in its June 29, 2007 Opinion.

## III. A Balance Of The Harms Favors The Government.

MCS contends that, absent a stay, it will suffer irreparable harm. MCS asserts that 60 to 70 percent of its income was derived from its contract with Fort Campbell, and that the loss of the contract will cost MCS $150,000.00 a year in lost profits and will force MCS to lay off five management and administrative staff. MCS also asserts that the loss of the contract will result in the loss of 45 HUBZone employees.[3] MCS argues that a stay would not impose any undue burden on either the awardee (the SLA) or the government.

The government argues that a stay of performance would injure the SLA, the Army, and the soldiers at Fort Campbell. Because the SLA began performance of the contract on July 1, 2007, the government asserts that a stay preventing the SLA from

---

[3]MCS contends that the HUBZone employees could potentially file a separate suit in District Court to preserve their jobs, as did union employees affected by the Court of Federal Claims' decision in Blue & Gold Fleet, L.P. v. United States, 70 Fed. Cl. 487 (2006). See Int'l Org. of Masters, Mates and Pilots v. Nat'l Park Service, 2006 U.S. Dist LEXIS 37329 (N.D. Cal. 2006). MCS's reliance on this potential hardship on its HUBZone employees is misplaced. A decision in this court, or in the Federal Circuit, regarding the propriety of the procurement and the award to the SLA does not limit the HUBZone employees' ability to vindicate their own rights through a separate cause of action. Id. at *19 (In holding that the union workers were not parties to the case before the Federal Circuit and that Blue & Gold Fleet did not represent the workers' interests, the court stated, "[t]he Federal Circuit, like the Court of Federal Claims, may not even address the merits [of the workers' claims]; instead, it too could focus only on Blue & Gold Fleet's timeliness.").

continuing performance would severely impact the Army's ability to provide food to soldiers stationed at Fort Campbell. In particular, the government contends that Fort Campbell serves over 7,000 meals daily to soldiers, and that a stay would require the Army to enter into a bridge contract or identify some other means of providing food services to the soldiers, including the possibility of serving Meals Ready to Eat ("MRE") portions during the stay. The government argues that MCS had no assurance of or entitlement to a government contract, and that MCS's alleged injury, based on its failure to be awarded the contract, is not sufficient to warrant a stay.

The court agrees with the government that the harms the government and the awardee would face if a stay were granted outweigh the potential harms alleged by MCS from the loss of the contract. The injuries MCS asserts stem from the loss of a contract that MCS had held prior to the procurement. While MCS suggests that it should have received the new contract, MCS does not contend that a finding that the CO erred in awarding the contract to the SLA would result in an immediate award of the contract to MCS. Indeed, success by MCS on the merits of its appeal would not necessarily result in the award of the successor contract to MCS given the unique preferences afforded SLAs in the procurement process under the RSA. Because MCS has not alleged potential irreparable harm that is not directly related to the loss of the successor contract, and because the government has demonstrated that a stay would pose serious injury to both the Army and the awardee, the court is not persuaded that a stay pending MCS's appeal to the Federal Circuit is appropriate. See CC Distributors, Inc. v. United States, 65 Fed. Cl.

813, 817 (2005) ("Where it is not clear that the plaintiff will likely obtain the award, and simply wishes to continue on as the incumbent while this protest is pending, the court is not persuaded that a temporary restraining order is needed to avoid any irreparable injury to the plaintiff."); PGBA, LLC v. United States, 60 Fed. Cl. 196, 221 (2004) (declining to "consider any incumbent contractor's loss of a successor contract to be irreparable harm."), aff'd, 389 F.3d 1219 (Fed. Cir. 2004).

**IV. The Public's Interest Would Not Be Served By A Stay.**

The plaintiff contends that a stay will benefit the public interest by preserving the fairness of the procurement process. See Seattle Sec. Serv's v. United States, 45 Fed. Cl. 560, 572 (2000) (noting that the public interest is "compromised whenever an agency abuses its discretion in evaluating a contractor's bid."). The government contends that a stay would be detrimental to the public interest, which it asserts is served by providing daily meal services to the soldiers stationed at Fort Campbell. See, IDEA Int'l, Inc. v. United States, 74 Fed. Cl. 129, 142 (2006) (recognizing the importance of serving the interests of military families and children). The plaintiff's arguments challenging the CO's decision to remove the Joint Report from the solicitation, as discussed supra, were waived under Blue & Gold because the plaintiff did not raise such a challenge during the bidding process. The plaintiff's remaining arguments focus on the exercise of agency discretion and do not identify any other statutory or regulatory violation by the procuring agency that would affect the fairness of the procurement process. Accordingly, the public interest weighs in favor of not interfering with the procurement decision. A procuring

agency "should be able to conduct procurements without excessive judicial infringement upon the agency's discretion." Aero Corp., S.A. v. United States, 38 Fed. Cl. 237, 242 (1997). The plaintiff has failed to establish any benefit to the public interest that would result from the court granting its motion to stay.

**CONCLUSION**

For all of the foregoing reasons, the plaintiff's motion for a stay pending appeal of this court's June 29, 2007 decision to the Federal Circuit is **DENIED**.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge